UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No.

APPROXIMATELY $49,800.00 IN UNITED STATES CURRENCY,

Defendant.

---

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM**

---

The United States of America, by its attorney, Elizabeth M. Monfils, Assistant United States Attorney for the Eastern District of Wisconsin, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**Nature of the Action**

1. This is a civil action to forfeit property to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

**The Defendant In Rem**

2. The defendant property, approximately $49,800.00 in United States currency, was seized on or about April 22, 2026, from Ariyanna Warren at or near the 5100 block of southbound I-94/I-41, Kenosha, Wisconsin.

3. The defendant property is presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

## Basis for Forfeiture

7. The defendant property, approximately $49,800.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

## Facts

8. Marijuana is a Schedule I controlled substance under 21 U.S.C. § 812.

9. Tetrahydrocannabinol ("THC") is a Schedule I controlled substance under 21 U.S.C. § 812.

10. Fentanyl is a Schedule II controlled substance under 21 U.S.C. § 812.

**Milwaukee Police Department investigation into drug trafficking operation**

11. In March 2026, officers with the Milwaukee Police Department ("MPD") were investigating a large-scale drug trafficking operation ("DTO") in which marijuana was being transported by airplane from the west coast to the Milwaukee, Wisconsin area.

12. A male individual having the initials C.A. was identified as a suspect involved in the DTO, and Ariyanna Warren was identified as being associated with C.A.

13. C.A. is a convicted felon in that on or about February 4, 2022, C.A. pleaded guilty in Milwaukee County Circuit Court, Case No. 21CF3746, to two felony firearm counts. On or about April 18, 2022, C.A. was sentenced to four years on probation.

**April 22, 2026, traffic stop**

14. On April 22, 2026, at approximately 4:06 a.m., a trooper with the Wisconsin State Patrol ("WSP") conducted a traffic stop on a speeding vehicle[1] driving southbound at or near the 5100 block of I-94/I-41 in Kenosha, Wisconsin.[2]

15. The following five individuals were inside the vehicle:

A. The driver was a male individual having the initials D.M.

B. The front seat passenger was a female individual having the initials S.S.

C. The rear left seat passenger was a male individual having the initials K.C.J.

D. The rear center seat passenger was Ariyanna Warren.

E. The rear right seat passenger was C.A.

16. During the trooper's initial contact with the driver, D.M., D.M. stated that he believed he was driving at approximately 90 mph.

17. The trooper conducted records checks on the driver and passengers and obtained the following information:

A. D.M. was on active probation for theft, weapons, and narcotics offenses. D.M. violated at least two of his probation rules during the traffic stop. In addition, D.M. would have violated his probation rules by leaving the State of Wisconsin. Probation and Parole placed a hold on D.M.

B. K.C.J. was on active parole for firearms and narcotics offenses. K.C.J. would have violated his parole rules by leaving the State of Wisconsin.

[1] The vehicle was traveling at 103 miles per hour ("mph") in a 70-mph zone.

[2] The location of the traffic stop was approximately 6.6 miles north of the Wisconsin-Illinois border, and there were only three remaining highway exits before entering Illinois.

C. C.A. was on active parole for firearms offenses as referenced in paragraph 13. C.A. would have violated his parole rules by leaving the State of Wisconsin.

D. Probation and Parole confirmed that D.M., K.C.J., and C.A. did not have permission to leave the State of Wisconsin.

18. D.M. was taken into custody for the probation violations and subsequent Probation and Parole hold.

19. The trooper informed D.M. that his vehicle would be searched due to probation violations and pursuant to Wisconsin Act 79.

20. Two deputies with the Kenosha County Sheriff's Office and another WSP trooper arrived at the scene to assist with the incident.

21. The passengers of the vehicle were asked, one at a time, to exit the vehicle.

22. C.A. exited the vehicle and consented to a search of his person. No contraband was found.

23. K.C.J. exited the vehicle and was asked to consent to a search of his person. K.C.J. began to empty his pockets. The trooper then searched K.C.J.'s person and located a total of approximately $10,800 in United States currency on his person.[3]

A. K.C.J. had violated one of his parole rules – namely, that he does not possess any more than $200 in cash on his person without his agent's prior permission.

B. K.C.J. did not have such permission and was taken into custody for that probation violation and subsequent Probation and Parole hold.

24. Before S.S. exited the vehicle, a trooper saw S.S. discreetly remove a large amount of currency from her pants pocket and place it on the front passenger seat where she had been sitting.

[3] The approximately $10,800 in United States currency is not a portion of the defendant approximately $49,800 in United States currency.

25. When Ariyanna Warren was asked to exit the vehicle, she moved a suitcase that had been resting on her lap and placed the suitcase on the rear driver's side passenger seat and placed a large black purse on the seat where she had been sitting.

**April 22, 2026, search of the vehicle**

26. On April 22, 2026, after all occupants exited the vehicle, the trooper searched the vehicle. The following items, among other things, were inside the vehicle:

A. On the front passenger seat was a backpack containing clothing consistent with someone traveling, two cell phones, and the currency that S.S. had left on the seat as referenced in paragraph 24, which totaled approximately $6,600 in United States currency.[4]

B. Inside the large black purse that Ariyanna Warren placed on the seat before she exited the vehicle were several cell phones and approximately $50,000 in United States currency. The defendant approximately $49,800 in United States currency is a portion of the approximately $50,000 in United States currency.

C. The suitcase that had been resting on Ariyanna Warren's lap before she exited the vehicle was empty.

D. In the trunk were two additional empty suitcases.

27. During the April 22, 2026, traffic stop, the trooper had various conversations, individually, with the occupants of the vehicle. Those conversations included, but are not limited to, the following:

A. Conversations with D.M.:

i. During the trooper's initial contact, D.M. told the trooper that he was driving at a high rate of speed because they were running late for their flight at Chicago O'Hare International Airport. The flight was at 5:00 a.m.

ii. When D.M. was told that Probation and Parole had not approved him to leave the State of Wisconsin, D.M. stated that he was not going to cross the "border" and that C.A. and Ariyanna Warren were

[4] The approximately $6,600 in United States currency is not a portion of the defendant approximately $49,800 in United States currency.

going to obtain an Uber for the remainder of their trip to Chicago O'Hare.

iii. While D.M. was in the rear compartment of the trooper's squad, D.M. stated that he did not know the other occupants in his vehicle.

B. Conversations with C.A.:

i. During the trooper's initial contact, when the trooper asked D.M. for the time of their flight, C.A. showed the trooper a notification or alarm on C.A.'s phone with the time of 5:20 a.m.

ii. C.A. confirmed with the trooper that he (C.A.) was on active parole.

C. Conversations with S.S.:

i. During the trooper's initial contact, when the trooper told S.S. that she had a large amount of currency on her person (referenced in paragraphs 24 and 26A), she replied, "No I didn't."

ii. The trooper later asked S.S. if she knew how much money she had, and she stated that she did not know and then stated approximately $1,200 to $1,300. S.S. stated her grandmother had withdrawn the money from her (the grandmother's) bank account.

iii. S.S. confirmed that she was going to Las Vegas. The trooper asked why her boyfriend, D.M., stated that only C.A. and Ariyanna Warren were going on the trip. S.S. stated she did not know.

D. Conversation with K.J.C.: K.J.C. was asked whether he was scheduled to be on the flight to Las Vegas or planned on entering the State of Illinois. K.J.C. stated that he was just a passenger and did not know where they were going.

E. Conversations with Ariyanna Warren:

i. During the trooper's initial contact, Warren told the trooper she had around $30,000 to $35,000 in her purse. Warren later stated she knew the amount was exactly $50,000.

ii. During the trooper's initial contact, Warren said she was going to Las Vegas to "get [her] body done" and the cost was $20,000. Warren later stated the total cost of her body procedure was $25,000.

iii. Warren stated that half of the $50,000 was for a body procedure, recovery, and to "have fun." The procedure was scheduled for April 24 at 2:00 p.m. Later Warren stated the money in her purse was the remainder of the balance she owed for the procedure and

she had been requested by the doctor to pay in cash. She was unable to provide proof of the appointment and stated she was going to meet the doctor when she arrived.

iv. When asked how Warren was getting to Chicago O'Hare, she stated in the vehicle they were riding in. The trooper asked why D.M. stated that he was dropping them off at the state line, and she replied, "I don't know. Don't ask me." Warren stated the plan was for D.M. to take them to Chicago O'Hare.

v. Warren stated the flight from Chicago to Las Vegas was scheduled to depart at 6:00 a.m., with boarding at 5:20 a.m. She, C.A., and S.S. were traveling on the flight. C.A. and S.S. were accompanying her to assist during her recovery.

vi. Warren could not provide proof of her airline ticket. She stated she did not know if she could view it on her phone. She later stated she did not have proof because her mother purchased them and she planned on getting her boarding pass at the kiosk. When asked what airline she was flying on, she said either United or American.

vii. When asked why their suitcases were empty, Warren stated they planned to buy everything they needed in Las Vegas and then bring it back in their suitcases.

28. On April 22, 2026, a drug detection canine gave a positive alert to the odor of a controlled substance on the approximately $10,800 in United States currency seized from the person of K.C.J.

29. On April 22, 2026, a drug detection canine gave a positive alert to the odor of a controlled substance on the approximately $6,600 in United States currency seized from the person of S.S.

30. On April 22, 2026, a drug detection canine gave a positive alert to the odor of a controlled substance on the approximately $50,000.00 in United States currency seized from Ariyanna Warren's purse.

**Kenosha County Sheriff's Office's narcotics investigation**

31. In April 2026, the Kenosha County Sheriff's Office ("KCSO") was working a narcotics investigation. As part of their investigation, officers conducted one or more controlled purchases of illegal narcotics using a confidential source ("CS").

32. A few days prior to the April 22, 2026, traffic stop described herein, the KCSO CS conducted a controlled buy of pressed pills containing suspected fentanyl from a narcotics trafficker.

33. The KCSO recorded the serial numbers of the dollar bills that the CS used to pay the narcotics trafficker for the pressed pills referenced in paragraph 32.

34. The approximately $50,000.00 in United States currency seized from Ariyanna Warren's purse during the traffic stop on April 22, 2026, included two $100 bills of recorded buy money the KCSO CS paid to the narcotics trafficker for the pressed pills referenced in paragraph 32.

35. The defendant approximately $49,800 in United States currency is the approximately $50,000.00 in United States currency seized from Ariyanna Warren's purse on April 22, 2026, minus the $200 in recorded buy money referenced in paragraph 34.

**MPD's continued investigation into the DTO**

36. MPD's ongoing investigation into the DTO, as referenced in paragraph 11, revealed that C.A. was associated with, or resided at, XXXX N. Richards Street, Milwaukee, Wisconsin (the "Residence").[5] Officers obtained a state search warrant for the Residence.

37. On April 30, 2026, at approximately 2:31 p.m., during surveillance at the Residence prior to execution of the search warrant, officers saw C.A. and Ariyanna Warren arrive at the

[5] In this complaint, certain information has been redacted using the letter "X" as a means of avoiding the revelation of any personal information.

location in a vehicle and park on the street near the Residence. C.A. and Ariyanna Warren then exited the vehicle. CA was transporting two suitcases, and Warren was carrying a tote bag.

38. Officers approached C.A. and Ariyanna Warren to detain them pursuant to the search warrant. When officers announced, "Milwaukee Police Department, let me see your hands," C.A. fled on foot. Officers pursued C.A. and eventually detained him. Warren, who did not flee, was also detained.

39. Officers searched the two suitcases in C.A.'s possession before he fled on foot. The suitcases contained two large vacuum sealable bags that both contained individually packaged, vacuum sealed, one-pound Mylar packages containing marijuana. The two suitcases contained a combined total of approximately 19,958.4 grams (approximately 44 pounds) of marijuana.

40. Both suitcases were locked with padlocks. The key to the two padlocks was inside the tote bag that Ariyanna Warren was carrying. The key was attached to a Las Vegas key lanyard.

41. Officers then searched the Residence. Inside the Residence, among other things, were approximately $4,950 in United States currency, approximately 10.16 grams of marijuana, a money counter, money bands, four digital scales, unused Mylar packaging, baggies, vacuum sealable bags, a loaded semi-automatic handgun, a loaded firearm magazine, and documents in the name of, or addressed to, C.A.

42. C.A. and Ariyanna Warren were arrested.

43. On April 30, 2026, at approximately 6:14 p.m., an officer conducted an interview of Ariyanna Warren (the "Interview").

44. Prior to conducting the Interview, the officer read Ariyanna Warren her constitutional Miranda rights. Warren stated that she understood each of her rights and was willing to speak with the officer.

45. During the Interview, Ariyanna Warren admitted the following:

A. Warren knew that the marijuana was inside the suitcases and stated this was not the first time she was aware of marijuana being in the suitcases.

B. Warren was not around when the marijuana was put into the suitcases, but the marijuana was placed into the suitcases by someone in Las Vegas, and then the suitcases would be brought back to Milwaukee.

C. When asked how many times Warren brought back suitcases, she stated she had not been doing it that long and then stated she did not want to talk anymore.

46. Officers obtained flight records pursuant to a subpoena. Flight records show that on April 30, 2026, C.A. and Ariyanna Warren were booked on United Airlines flight number 664 from Las Vegas to Chicago, arriving at 12:34 p.m. (approximately two hours before they arrived at the Residence in their vehicle).

**C.A.'s State Criminal Drug Case**

47. On May 5, 2026, C.A. was charged in Milwaukee County Circuit Court, Case No. 26CF2101, with possession of THC with intent to deliver, felon in possession of a firearm, maintaining a drug trafficking place, and resisting or obstructing an officer.

**Ariyanna Warren's State Criminal Drug Case**

48. On May 5, 2026, Ariyanna Warren was charged in Milwaukee County Circuit Court, Case No. 26CF2102, with possession of THC with intent to deliver.

**Administrative Forfeiture Proceedings**

49. The Drug Enforcement Administration ("DEA") began administrative forfeiture proceedings against the approximately $49,800.00 in United States currency on the ground that the seized currency was used or intended to be used in exchange for controlled substances or was proceeds of trafficking in controlled substances.

50. On or about August 18, 2026, Ariyanna Warren filed a claim with the DEA in the administrative forfeiture proceedings to the defendant approximately $49,800.00 in United States currency.

**Warrant for Arrest In Rem**

51. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**Claims for Relief**

52. The plaintiff alleges and incorporates by reference the paragraphs above.

53. By the foregoing and other acts, the defendant property, approximately $49,800.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

54. The defendant approximately $49,800.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2026.

Respectfully submitted,

*s/Elizabeth M. Monfils*
ELIZABETH M. MONFILS
Assistant United States Attorney
Wisconsin Bar No. 1061622
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202

Telephone: (414) 297-1700
E-Mail: elizabeth.monfils@usdoj.gov

## Verification

I, Allison George, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration (DEA) in Milwaukee, Wisconsin, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 46 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 11/13/2026

*s/Allison George*
Allison George
Task Force Officer
Drug Enforcement Administration